AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT
for the
## Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with (360) 927-7237 | ) | Case No.   MJ20-160 |
| (Target Cell Phone 1), for Investigation of 21 | ) | |
| U.S.C. § 841(a) and Other Offenses | ) | |

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in the Western District of Washington and District of New Jersey, there is now concealed property and evidence described in Attachment B. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒  evidence of a crime;

☐  contraband, fruits of crime, or other items illegally possessed;

☐  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a) | Distribution of Controlled Substance |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒  Delayed notice of <u>90</u> days (give exact ending date if more than 30 days: August 21, 2020) is requested under    18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Christopher VandenBos, Task Force Officer
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by Telephone.

Date: <u>April 8, 2020</u>

_____
*Judge's signature*

City and state:  <u>Seattle, Washington</u>

Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

USAO # 2020R00186

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON )
                     )  ss
COUNTY OF WHATCOM    )

I, Christopher VandenBos, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (360) 927-7237, with listed subscriber Richard KLANDER (hereinafter Target Cell Phone 1), whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.  Target Cell Phone 1 is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

### ECPA

2.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### Pen Register Act

3.      Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 1
USAO # 2020R00186

4.      The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

5.      This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Seungjae Lee that (1) identifies DEA as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

7.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act.  Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with Target Cell Phone 1 without geographic limit.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 2
USAO # 2020R00186

8.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that Verizon Wireless and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

9.      **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

10.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).  Specifically, I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office.  In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq*.).  I have been assigned as a Task Force Officer with the DEA since January 2019.  Prior to becoming a Task Force Officer, I was a Deputy with the Whatcom County Sheriff's Office in Washington. I received my Washington State law enforcement commission in 2015.  In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, including physical surveillance, interviews, and executions of state and federal search warrants.

11.     I have also participated, on numerous occasions, in the debriefing of defendants, witnesses, and informants involved in drug trafficking, in which I have discussed with them, among other things, their methods of drug smuggling, distribution,

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 3
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

packaging, trafficking, avoiding law enforcement detection, and laundering proceeds.  I have also discussed with and learned from other law enforcement investigators about the same topics.

12.     In addition, I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, as well as other training courses related to gangs, narcotics trafficking, and fentanyl-related overdose deaths.

13.     Based on my training and experience, I have become familiar with the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of drug trafficking.

14.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all of my knowledge about this matter.

15.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a) have been committed by Troy KLANDER and Zackary SALAS.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

## PRIOR ACTION

16.     This is the second application for a search warrant and a pen register order for Target Cell Phone 1 in this judicial district in connection with this investigation. Previously, the Honorable Mary Alice Theiler issued a search warrant and a pen register order for Target Cell Phone 1 on February 24, 2020.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 4
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PROBABLE CAUSE

17.     The United States, including the DEA, is conducting a criminal investigation of Troy KLANDER and Zackary SALAS regarding possible violations of 21 U.S.C. § 841(a).

**A.     Identification of Troy KLANDER as a Fentanyl Dealer**

18.     On January 28, 2020, investigators from the Whatcom Gang and Drug Task Force (WGDTF) and the DEA Bellingham Resident Office interviewed WGDTF confidential source #1520 (hereinafter "CS1"). CS1 told the investigators that he/she could purchase fentanyl-laced pills from an individual named Troy KLANDER. When shown a Washington State Department of Licensing photo of KLANDER, CS1 confirmed the person in the photo as the person from whom he/she had been buying fentanyl-laced pills.

19.      According to CS1, KLANDER received his pills from a supplier who lived in the "Britton Road" area of Bellingham, Washington and usually picked up pills from his supplier around 5:00 p.m. due to the supplier's work schedule. CS1 also told the investigators that KLANDER had recently driven to California to bring fentanyl-laced pills and multiple pounds of cocaine back to Washington.

20.     CS1 provided (360) 927-7237 (Target Cell Phone 1) as KLANDER's phone number. Investigators later obtained subscriber information for that phone number and confirmed that Target Cell Phone 1 was subscribed to "Richard KLANDER" at 1656 Mt Baker Highway, Bellingham, WA, serviced by Verizon. The activation date for the service was January 29, 2016.

21.     CS1 started cooperating with the WGDTF in late January of 2020 in return for prosecutorial consideration after WGDTF investigators had bought fentanyl-laced counterfeit pills from CS1 on three separate occasions. According to a search of multiple law enforcement databases, KLANDER has no criminal convictions. CS1 is currently under judicial supervision relating to a 2018 Washington State misdemeanor and gross misdemeanor arrest. The underlying arrest was not for a crime of dishonesty.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 5
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.     First Controlled Buy of Fentanyl-Laced Pills from KLANDER on January 31, 2020**

22.     On January 31, 2020, investigators met with CS1.  CS1 told investigators that he/she had contacted KLANDER over the phone prior to his/her meeting with the investigators and arranged to meet with KLANDER to buy fentanyl-laced pills.  CS1 showed investigators text messages exchanged between him/her and KLANDER, in which a meeting place for the deal and the amount of fentanyl pills to be purchased were discussed.  The phone number listed for KLANDER in CS1's phone was (360) 927-7237 (Target Cell Phone 1).  Before sending CS1 to do the controlled buy, investigators searched CS1 and CS1's vehicle for contraband, such as drugs and weapons, and US paper currency; none was found.  Investigators provided CS1 with pre-recorded buy funds.

23.     Investigators then followed CS1 to a location in Bellingham, Washington, where CS1 was supposed to meet with KLANDER for the deal. Approximately twelve minutes after CS1's vehicle arrived at the meeting location, investigators observed a male, whom they identified as KLANDER based on his Washington State Department of Licensing photograph, getting into CS1's vehicle.  CS1 then drove a short distance in a parking lot. Approximately a minute later, investigators saw KLANDER getting out of CS1's vehicle and walk away from the area.  After KLANDER and CS1 separated, investigators followed CS1 from the deal location to another location for debriefing.

24.     At the debriefing location, CS1 provided investigators with three suspected fentanyl-laced pills. The pills were round, light blue in color, and stamped "M 30." I know, based on my training and experience, that these "M 30" pills are consistent in appearance with counterfeit pills that are designed to look like 30mg oxycodone pills but actually contain fentanyl and/or fentanyl analogues. These pills have been located throughout Whatcom and Skagit County in recent months.

25.     Investigators then searched CS1 and CS1's vehicle for contraband, such as drugs and weapons, and US paper currency; none was found. During a subsequent

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 6
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    debriefing, CS1 told investigators that he/she gave the pre-recorded buy funds to

2    KLANDER and received the aforementioned "M 30" pills in exchange.

3    **D.    Second and Third Controlled Buys from KLANDER on February 4, 2020**

4         26.    On February 4, 2020, investigators met with CS1.  CS1 showed

5    investigators text messages he/she exchanged with KLANDER at Target Cell Phone 1 on

6    February 3, 2020, in which CS1 asked KLANDER to save him/her "8."  Investigators

7    recognized this as a request to set aside eight "M 30" pills in KLANDER's inventory for

8    CS1. In the following text messages, CS1 and KLANDER agreed upon a time and place

9    for a deal for fentanyl-laced pills.

10        27.    Prior to sending CS1 to do the controlled buy with KLANDER,

11   investigators searched CS1 for contraband, such as drugs and weapons, and US paper

12   currency; none was found. CS1's vehicle was not searched. Investigators provided CS1

13   with pre-recorded buy funds. CS1 was equipped with recording equipment.

14        28.    Investigators then followed CS1 to a parking lot in Bellingham,

15   Washington, where CS1 and KLANDER had agreed to meet.  A white 2000 Nissan

16   Frontier bearing Washington License plate C90196E (hereinafter Target Vehicle 1) soon

17   arrived at the meeting location.  A check of the license plate through the Washington State

18   Department database showed that the vehicle was registered to Troy John KLANDER at

19   1656 Mount Baker Highway, Bellingham, Washington.

20        29.    Once Target Vehicle 1 arrived at the location, CS1 got out of his/her car

21   and into Target Vehicle 1.  After a short stay, CS1 got out of Target Vehicle 1 and left the

22   area; investigators followed CS1 to a pre-arranged location for debriefing.  Investigators

23   also positively identified KLANDER as the driver of Target Vehicle 1 following the

24   controlled buy. Investigators then followed KLANDER and Target Vehicle 1 to 1511

25   North State Street, Apartment 253, Bellingham, Washington.

26        30.    Investigators then met with CS1 for debriefing.  CS1 provided investigators

27   with approximately eight "M 30" pills, consistent in their appearance with the pills

28   previously purchased by CS1 from KLANDER. Some of the pills were partially broken

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 7
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

down and not whole. Based on my training and experience, I know that these counterfeit "M 30" pills laced with fentanyl are sometimes less durable than pharmaceutical-grade pills manufactured in legitimate laboratories.

31.     Investigators subsequently searched CS1 and CS1's vehicle for contraband, such as drugs and weapons, and US paper currency; none was found.

32.     During the ensuing debriefing session, CS1 told investigators he/she had gotten into Target Vehicle 1, gave KLANDER pre-recorded buy funds, and received the "M 30" pills in return.  According to CS1, KLANDER told CS1 during the controlled buy that he would receive new supplies of "M 30" pills at around 5 p.m. that evening. Investigators later reviewed the recording of the controlled buy and heard KLANDER saying that "his guy" would be off work at 5 and that "ten"—investigators interpreted this as ten "M 30" pills—KLANDER had in his possession would not last him very long.

33.     Later the same day, investigators arranged another controlled buy from KLANDER through CS1 to identify KLANDER's supplier.  At approximately 5:27 p.m., investigators saw KLANDER leaving 1511 North State Street, Apartment 253, Bellingham, Washington.  KLANDER drove Target Vehicle 1 from the apartment to another parking lot in Bellingham, Washington. At around 5:43 p.m., KLANDER was seen repeatedly checking his cellphone while in Target Vehicle 1.

34.     In the meantime, CS1 sent a text message to KLANDER at Target Cell Phone 1 at approximately 5:39 p.m., asking to buy additional "M 30" pills. KLANDER immediately responded, suggested a meeting location for the deal, and said: "on my way to reup first." Investigators recognized the term "reup" as a common term for re-stocking supplies of illegal drugs.

35.     At approximately 5:48 p.m., investigators saw KLANDER leaving the parking lot in Target Vehicle 1.  Surveillance was maintained on KLANDER and Target Vehicle 1.  At approximately 5:50 p.m., CS1 received a message from KLANDER at Target Cell Phone 1, saying: "head there now."  At approximately 5:59 p.m., investigators saw Target Vehicle 1 arriving at 4731 East Oregon Street, Bellingham, Washington.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 8
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Target Vehicle 1 then parked in front of an open garage door of a detached shop building at that address. Target Vehicle 1 stayed there for approximately 10 minutes and left at approximately 6:09 p.m. Immediately following Target Vehicle 1's departure from 4731 East Oregon Street, CS1 received a text message from KLANDER at Target Cell Phone 1. The text message said: "2 min."

36.    While the surveillance was ongoing, investigators searched CS1 and his/her vehicle for contraband, such as drugs and weapons, and US paper currency, in preparation for the impending deal; none was found. CS1 was provided with pre-recorded buy funds and recording equipment. Investigators then followed CS1 to the deal location suggested by KLANDER.

37.    At approximately 6:11 p.m., investigators observed Target Vehicle 1 arrive at the deal location. Target Vehicle 1 parked near CS1's vehicle. Although investigators were not able to see the exact movement of KLANDER due to the position of surveillance units and the darkness, investigators saw the passenger door of Target Vehicle 1 opening and heard conversation taking place between CS1 and KLANDER through the covert audio transmitting equipment CS1 was wearing. Following the conversation, CS1 left the area and drove to a pre-arranged location for debriefing.

38.    At the debriefing session, CS1 gave investigators approximately ten "M 30" pills. Some of these pills were partially broken down, similar to the pills bought earlier that day. Investigators then searched CS1 and CS1's vehicle for contraband, including drugs and weapons, and US currency; none was found. CS1 told investigators that once Target Vehicle 1 arrived at the deal location, he/she got into Target Vehicle 1, gave KLANDER the pre-recorded buy funds, and received ten "M 30" pills in return. A review of the audio recording from the controlled buy confirmed CS1's description of events.[1]

---

[1] This was the last time CS1 was utilized by investigators to conduct a controlled purchase from KLANDER. While conducting surveillance on KLANDER in the weeks following the third controlled purchase from KLANDER, investigators observed CS1 meet with KLANDER without investigators' direction. Investigators ceased using CS1 as a cooperator for the investigation on KLANDER following this observation. CS1 later admitted to purchasing pills from KLANDER outside of the direction of investigators for personal consumption.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 9
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

39.     The ten pills purchased from KLANDER were later tested and confirmed by the DEA Western Laboratory to contain fentanyl.

**E.     Surveillance of 4731 East Oregon Street, Bellingham, Washington on February 7, 2020 and Identification of SALAS as the Potential Supplier**

40.     On February 7, 2020 at approximately 4:45 p.m., investigators established surveillance at 4731 East Oregon Street, Bellingham, Washington.  Immediately after surveillance was established, Target Vehicle 1 was seen leaving the driveway associated with 4731 East Oregon Street.  Approximately three minutes later, a black Toyota Tundra bearing Washington license plate C89748E (hereinafter Target Vehicle 2) was also seen leaving the driveway of 4731 East Oregon Street.

41.     According to the Washington State Department of Licensing, Target Vehicle 2 was registered to Zackary SALAS at 4337 Squalicum Lake Road, Bellingham, Washington.  A check of a Whatcom County Sheriff's Office database showed that SALAS had been contacted by law enforcement in Bellingham, Washington, as the driver of Target Vehicle 2 for a traffic citation on September 6, 2019.

42.     Investigators researched SALAS's name on Whatcom County Sheriff's Office and Bellingham Police Department (BPD) databases.  SALAS's cell phone number was listed in both databases as (360) 303-2184 (hereinafter Target Cell Phone 2). A follow-up research on the number showed that Target Cell Phone 2 was being serviced by AT&T and that the service was activated on August 25, 2018. The subscriber name for the number was Zackary SALAS and the listed user address 4731 E Oregon St, Bellingham, WA 98226.

43.     Investigators reviewed toll data associated with Target Cell Phone 2 and discovered that between January 2, 2020 and February 4, 2020, approximately 50 telephonic contacts were made between Target Cell Phone 2 (belonging to SALAS) and Target Cell Phone 1 (belonging to KLANDER). Notably, on February 4, 2020, the day

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 10
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigators conducted two controlled buys from KLANDER, there was one contact between the two Target Cell Phones at approximately 8:24 p.m.[2]

44.     Investigators subsequently obtained the International Mobile Equipment Identity (IMEI) numbers for Target Cell Phones 1 and 2 and identified both Target Cell Phones as iPhones. Based on my training and experience, I know that messages between iPhones are often exchanged on the "iMessage" platform over an internet connection and are not reflected in the toll records.

**F.     Surveillance of 4731 East Oregon Street, Bellingham, Washington on February 10 and 14, 2020**

45.     On February 10, 2020, investigators established surveillance at 4731 East Oregon Street, Bellingham, Washington.  At approximately 6:17 p.m., investigators saw Target Vehicle 2 leaving the driveway of 4731 East Oregon Street.  Investigators followed Target Vehicle 2 to the 4300 block of Squalicum Lake Road, near SALAS's listed address for the vehicle registration.

46.     On February 14, 2020, investigators again established surveillance around 4731 East Oregon Street, Bellingham, Washington. At approximately 4:25 p.m., investigators saw Target Vehicle 1 leaving the driveway of 4731 East Oregon Street. A male matching the description of KLANDER was the driver.

47.     Then, at approximately 4:46 p.m., investigators saw Target Vehicle 2 also leaving the driveway of 4731 East Oregon Street. Investigators identified SALAS as the driver of Target Vehicle 2 based on SALAS's Washington Department of Licensing photo.

//

//

//

---

[2] As described above, the drug trafficking activity observed by investigators related to the controlled buys on February 4, 2020 ended around 6:11 p.m., which was approximately two hours prior to the phone call.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 11
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**G.      Information Received from a Whatcom Gang and Drug Task Force Confidential Source on February 11, 2020**

47.      On February 11, 2020, investigators from the WGDTF and the DEA Bellingham Resident Office interviewed WGDTF Confidential Source #1521 (hereinafter "CS2").  CS2 agreed to cooperate with investigators in exchange for prosecutorial consideration after being apprehended by law enforcement with a user amount of suspected fentanyl-laced pills in his or her possession.

48.      CS2 has a felony conviction from 2016 for Possession of a Controlled Substance.  CS2 also has a gross misdemeanor conviction (malicious mischief in the third degree) from 2016 and a misdemeanor conviction (driving while license suspended) from 2014.  CS2 has no known convictions related to crimes of dishonesty.

49.      During the interview, CS2 identified KLANDER as his/her source for "M 30" pills. CS2 also confirmed Target Cell Phone 1 and Target Vehicle 1 as KLANDER's phone and car. According to CS2, KLANDER told CS2 that he had recently gone to California, where he had received thousands of the suspected fentanyl-laced pills, five pounds of cocaine, and heroin, and brought them back to Washington.

**H.      Fourth Controlled Buy of Fentanyl-Laced Pills from KLANDER on February 18, 2020**

50.      On February 18, 2020 at approximately 4:32 p.m., investigators met with CS2 to conduct another controlled buy from KLANDER.  CS2 told investigators that he/she had communicated with KLANDER at Target Cell Phone 1 prior to the meeting with the investigators and arranged a deal to buy "M 30" pills from KLANDER at a location in Bellingham later that day.

51.      Investigators reviewed the text messages exchanged between CS2 and KLANDER at Target Cell Phone 1 earlier that morning to set up the deal. One of the messages from KLANDER said; "K, I'm trying to reup now." When CS2 asked to buy approximately 20 pills, KLANDER responded: "Yeah, I picked it up already."

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 12
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

52.     Before sending CS2 to do the deal with KLANDER, investigators searched CS2 for contraband, including drugs and weapons, as well as US paper currency; none was found.  CS2 was provided with pre-recorded buy funds and recording equipment.

53.     A few minutes prior to the planned meeting with KLANDER, CS2 contacted KLANDER at Target Cell Phone 1 and asked to buy additional "M 30" pills. This was done to induce KLANDER to contact his source again to receive more supplies. KLANDER responded and said: "Coming from Ferndale but only have what u wanted and a couple extras. I can grab what I have at the house fast."

54.     At approximately 5:23 p.m., KLANDER arrived at the deal location in Target Vehicle 1. Target Vehicle 1 met with CS2. CS2 then got into Target Vehicle 1. KLANDER was positively identified by investigators during this time. KLANDER drove Target Vehicle 1 through the parking lot, and then parked. CS2 got out of Target Vehicle 1 at approximately 5:29 p.m.

55.     Following the controlled buy, investigators met with CS2 at a pre-arranged location for debriefing. CS2 provided investigators with 29 "M 30" pills. CS2 was then searched by investigators; no additional contraband was located. According to CS2, KLANDER said during their meeting that he had access to a "limitless" amount of pills he could sell to CS2. CS2 also told investigators that KLANDER was planning to get an additional supply of pills later around 6:00 p.m.  CS2 believed that he/she had purchased the last of KLANDER's supply. A subsequent review of the audio recording from the controlled buy confirmed CS2's account of events.

56.     After the controlled buy, investigators continued surveillance on Target Vehicle 1 with the assistance from a Customs and Border Patrol (CBP) helicopter and followed Target Vehicle 1 to 4731 East Oregon Street, Bellingham, Washington. At around 6:18 p.m., Target Vehicle 1 parked in front of the shop building at that address; no other cars were in the immediate vicinity.  Shortly after, a second vehicle arrived at 4731 East Oregon Street. The CBP helicopter observed the driver of Target Vehicle 1 – who was KLANDER – and the driver of the second vehicle going into the shop building

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 13
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

together and staying there for about ten minutes. At approximately 6:47 p.m., the two came out of the building, and Target Vehicle 1 and the second vehicle left the area. Investigators on the ground observed the second vehicle shortly after it left 4731 East Oregon Street and identified it as Target Vehicle 2, belonging to SALAS.

57.     At approximately 6:49 p.m., CS2 contacted investigators by phone and told them that KLANDER had called and text messaged CS2 from Target Cell Phone 1 and said that he now had additional pills to sell.  Investigators subsequently met with CS2 and confirmed the text messages exchanged between CS2 and KLANDER at Target Cell Phone 1.  Investigators decided not to conduct another controlled purchase utilizing CS2 that night. Surveillance was terminated for that night.

**I.     Further Surveillance of SALAS and KLANDER (Mar. 30, 2020)**

58.     On February 24, 2020, Magistrate Judge Mary Alice Theiler issued cell phone tracking warrants and pen-trap orders for Target Cell Phones 1 and 2. On the same date, Magistrate Judge Theiler also issued a vehicle-tracking warrant for Target Vehicles 1 and 2.

59.     On March 30, 2020, investigators conducted digital and physical surveillance of SALAS and KLANDER.  Investigators observed remotely accessible video footage of 4731 East Oregon Street.  At about 11:22 a.m. investigators observed, via the remotely accessed recorded video, SALAS arrive at 4731 East Oregon Street in Target Vehicle 2.  SALAS parked and accessed the shop building at that address.  Target Vehicle 2 remained at that address until approximately 3:08 p.m.  Through remotely accessed recorded video, investigators observed SALAS get into Target Vehicle 2 and leave that address.

60.     At approximately 3:24 p.m., using a judicially authorized phone tracking warrant, investigators observed a cell phone ping location on SALAS's cell phone ((360) 303-2184) (Target Cell Phone 2).  The location data indicated that SALAS's phone was in the area of 1810 Cornwall Avenue, Bellingham, Washington.  At about 4:10 p.m., investigators physically observed SALAS in the parking lot of 1810 Cornwall Avenue. SALAS appeared to be working on his truck (Target Vehicle 2) in front of a stereo store.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 14
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

61.     At about 4:19 p.m., investigators saw KLANDER's truck (Target Vehicle 1) arrive and park in the parking lot of 1810 Cornwall Avenue.  Investigators soon identified KLANDER as the driver.  Investigators saw SALAS walk over to KLANDER's truck (Target Vehicle 1) and get into the passenger seat.  SALAS and KLANDER remained in Target Vehicle 1 for about ten minutes.  SALAS then returned to his truck (Target Vehicle 2) and drove from the area a few minutes later.  KLANDER drove from the area at approximately 4:30 p.m.

62.     Investigators were unable to follow SALAS.  Using a judicially authorized vehicle tracker affixed to Target Vehicle 1, investigators observed that Target Vehicle 1 was in the area of a Safeway grocery store at 1275 East Sunset Drive in Bellingham at about 4:38 p.m.  Shortly after, investigators physically observed KLANDER meet with two people in the grocery's parking lot.  Based on investigators' training and experience, KLANDER's interactions with these people were consistent with drug transactions.  Among other things, investigators witnessed KLANDER conduct a hand-to-hand exchange through a vehicle window.  KLANDER drove from the parking lot at around 4:44 p.m.

63.     At about 5:18 p.m., via remotely accessible recorded video surveillance, investigators saw Target Vehicle 2 return to the shop building at 4731 East Oregon Street, the suspected stash house location discussed above.  A man matching SALAS's description was driving.

64.     Based on my training and experience, my work on this case, and my discussions with other investigators, I believe that KLANDER's and SALAS's actions on March 30, 2020, are consistent with drug trafficking.  Specifically, it appears likely that KLANDER met with SALAS at 1810 Cornwall Avenue for another "reup" (resupply) of narcotics, and then KLANDER sold the narcotics he had obtained from SALAS in KLANDER's subsequent shorter meetings in the Safeway parking lot.  The meeting between KLANDER and SALAS lasted about ten minutes; KLANDER's subsequent meetings with the two people in the Safeway parking lasted only about five minutes in total.

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 15
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## J.   Drug Traffickers' Cell Phone Use and Cell Phone Location Technology

65.   Based on my training and experience, I know that drug traffickers often use cell phones to communicate with their suppliers, re-distributors and customers.  These communications often include details around drug deals such as time and place of drug transactions, types and amounts of drugs to be sold and bought, methods of payment for drugs, and quality of drugs sold or bought. Thus, drug traffickers often carry their cell phones with them while they are engaged in drug trafficking-related activities.

66.   Drug traffickers often use "stash houses" to conceal their illegal activities and contraband. Such stash houses allow drug traffickers to keep their contraband at a hidden location, where they may not live, thereby making it more difficult for law enforcement and/or competitors to identify these locations where drugs and drug proceeds may be hidden.

67.   It is common for drug traffickers to hide proceeds of illegal drug sales and records of illegal drug transactions in secure locations within their residences, stash houses, storage units, garages, outbuildings and/or vehicles on the property for their ready access and to conceal them from law enforcement authorities.

68.   As described above, there is probable cause to believe that KLANDER and SALAS are currently engaged in distributing counterfeit pills laced with fentanyl and using Target Cell Phones 1 and 2, respectively, to facilitate their drug trafficking activities. Investigators believe that obtaining their cell phone location data will aid them in identifying additional co-conspirators, stash locations, and their pattern of behavior, among other things.

69.   More generally, in my experience, cell phone location data is useful in corroborating movements of targets, especially suspected drug traffickers. When used in conjunction with physical surveillance, cell phone location data is useful to identify vehicles, locations, and individuals involved in ongoing drug trafficking schemes. Additionally, cell phone location data can show that a target cell phone is used by a

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 16
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

particular individual by connecting physical surveillance of that individual with evidence of the cell phone's use.

70.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content. Currently, Target Cell Phone 1 has IMEI 352980097709221.

71.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

72.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 17
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

73.     Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

74.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

75.     Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of Target Cell Phone 1, including by

1   initiating a signal to determine the location of Target Cell Phone 1 on Verizon Wireless's

2   network or with such other reference points as may be reasonably available.

3       76.     When using a cellular connection to receive or transmit data, a cellular

4   phone typically utilizes a cell tower to make telephone calls, send or receive text

5   messages, send or receive emails, surf the internet, carry out application initiated data

6   transfers, among other things.

7       77.     Based on my training and experience, I know that Verizon Wireless can

8   collect cell-site data about Target Cell Phone 1.  Based on my training and experience, I

9   know that for each communication (including data connections) a cellular device makes,

10  its wireless service provider can typically determine: (1) the date and time of the

11  communication; (2) the telephone numbers involved, if any; (3) the cell tower to which

12  the customer connected at the beginning of the communication; (4) the cell tower to

13  which the customer connected at the end of the communication; and (5) the duration of

14  the communication.  I also know that wireless providers such as Verizon Wireless

15  typically collect and retain cell-site data pertaining to cellular devices to which they

16  provide service in their normal course of business in order to use this information for

17  various business-related purposes.

18      78.     Different service providers use different systems, applications, and reports

19  to collect or analyze cell site data.  These systems, applications, and reports are referred

20  to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon

21  Wireless), Periodic Location Updates or "PLU" (Verizon Wireless), per call

22  measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS"

23  (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.   RTT data, for example,

24  estimates the approximate distance of the cellular device from a cellular tower based

25  upon the speed with which signals travel between the device and the tower.  This

26  information can be used to estimate an approximate location range that is more precise

27  than typical cell-site data.

28

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 19
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

79.     Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone 1's user or users and may assist in the identification of co-conspirators and/or victims.

80.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone.  These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone.  To provide for any such changes made to Target Cell Phone 1, Attachment A specifies that the property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 20
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## AUTHORIZATION REQUEST

81.     Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

82.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of Target Cell Phone 1 until 90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of Target Cell Phone 1 would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

83.     I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless.  I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of Target Cell Phone 1 on

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 21
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

84.     Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on Verizon Wireless. Because the warrant will be served on Verizon Wireless, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate Target Cell Phone 1 outside of daytime hours.

Christopher VandenBos, Affiant
Task Force Officer
DEA

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on 8th day of April, 2020.

HON. BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER VANDENBOS - 22
USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

DECLARATION

I, Seungjae Lee, declare as follows:

1.       I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.       I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.       Pursuant to 18 U.S.C. § 3122(b), I certify that the DEA is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 8th day of April, 2020.

 *s/ Seungjae Lee*
 SEUNGJAE LEE
 Assistant United States Attorney

EXHIBIT 1 -- PAGE 1

USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.     Records and information associated with the cellular phone assigned call number (360) 927-7237, with International Mobile Equipment Identity ("IMEI") 352980097709221.

2.     Target Cell Phone 1.

3.     The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

 This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding Target Cell Phone 1.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

**I.** <u>**Section I**</u>**:  Information to be Disclosed by Verizon Wireless**

 1. **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 days.**

  a. The Verizon Wireless shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from Target Cell Phone 1 including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

 (i) IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

 (ii) Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

 (iii) IP addresses of any websites or other servers to which the cell phone device or devices connected; and

 (iv) Source and destination telephone numbers and email addresses.

b.      On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, Verizon Wireless shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or non-published subscriber names and addresses, including billing addresses.

2.      **Prospective Cell Site Location Information.**

a.      All information about the location of Target Cell Phone 1 described in Attachment A for **a period of 45 days**, during all times of day and night.  This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by Target Cell Phone 1.

3.      **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.      All information about the location of Target Cell Phone 1 described in Attachment A for **a period of 45 days**, during all times of day and night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by Target Cell Phone 1.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Verizon Wireless must furnish the government all

ATTACHMENT B -- PAGE 2

USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services.  The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**     **Section II:  Information to Be Seized by the Government**

1.     All information described above in Section I that constitutes evidence of violations of 21 U.S.C. 841(a) involving Troy KLANDER and Zackary SALAS.

2.     All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.     All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.     Location Information regarding Target Cell Phone 1.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Verizon Wireless in order to locate the things particularly described in this Warrant.

ATTACHMENT B -- PAGE 3

USAO # 2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970